

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00298-CV

IN THE INTEREST OF M.Y.G., C.R.J., N.R., CHILDREN

On Appeal from the 64th District Court
Castro County, Texas
Trial Court No. A9422-1201, Honorable Robert W. Kinkaid Jr., Presiding

January 31, 2014

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

In this accelerated appeal, Amber and Carl[1] appeal an order terminating their respective parental rights to the children. Amber appeals as to all of the listed children and Carl appeals as to M.Y.G. and C.R.J. The father of N.R. has not appealed the trial court's ruling.

Amber and Carl each contest the legal and factual sufficiency of the evidence to support the trial court's judgment terminating their respective parental rights for knowingly placing or knowingly allowing the children to remain in conditions or

---

[1] Amber and Carl are pseudonyms for the appealing parents and will be referred to by these names throughout.

surroundings that endangered their physical or emotional well-being. TEX. FAM. CODE. ANN. § 161.001(1)(D) (West Supp. 2013).[2] Likewise, each contest the legal and factual sufficiency of the evidence to support the trial court's judgment terminating their respective parental rights for engaging in conduct or knowingly placing the children with persons who engaged in conduct that endangers the physical or emotional well-being of the children. § 161.001(1)(E). Finally, each contends that the evidence is legally and factually insufficient to support the trial court's judgment that termination was in the best interest of the children. § 161.001(2).

Separately, Carl contends that the evidence was legally and factually insufficient to support his termination for his knowingly engaging in conduct that resulted in his conviction for an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing of the petition. § 161.001(1)(Q). Additionally, Carl contends that section 161.001(1)(Q) is constitutionally invalid on its face and as applied in this case.

We will affirm the judgment of the trial court as to both Amber and Carl.

Factual and Procedural Background

On January 7, 2012, law enforcement officers raided the home of Amber and Carl. During the raid, marijuana, cocaine, hydrocodone and drug paraphernalia were found in the home. Both Amber and Carl were arrested. The children were all present in the home when the raid occurred and their parents were arrested.

---

[2] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

2

As a result of the drug raid, the Texas Department of Family and Protective Services (Department) opened a negligent supervision file regarding the children. Assigned to investigate this file was investigator Mario Moreno. During his investigation, Moreno confirmed from Amber and Carl that the children were present at the time of the drug raid. Although Amber and Carl refused to admit to possession of the drugs found at the home, both admitted to smoking marijuana the day before the raid. Eventually, only Carl was charged as a result of the drug raid. However, as a result of the drug raid, the Department filed a petition for temporary conservatorship and for termination of Amber and Carl's parental rights. Subsequently, Moreno developed a joint service plan for Amber and Carl. Amber and Carl each reviewed the plan and, at that time, neither was incarcerated. The plan had specific items that both Amber and Carl were required to complete, maintain, or refrain from doing.

The file on the children was then placed in the hands of a Department conservatorship worker, Kristen McClure, to complete. Initially, the children were placed with their paternal grandmother. However, the children were again removed when in August of 2012, the Department learned that the grandmother had simply returned the children to Amber and Carl. This action was in contravention of the order of the trial court that Amber and Carl not have unsupervised visitation with the children. Prior to the Department finding out that the children were back with Amber and Carl, neither Amber nor Carl had advised the Department of this fact; in fact, the record reflects that Amber advised that the children were not living in the marital home.

In October of 2012, Amber and Carl's home was again the scene of a drug raid. There were four individuals arrested in the home at that time. Those arrested were the

relatives of Carl: Ruben, Ishmael, Sr., Ishmael, Jr., and Frank. The drugs seized were methamphetamine, cocaine, and marijuana. Neither Amber nor Carl was arrested or charged as a result of this drug bust.

On November 8, 2012, Carl entered a plea of guilty to possession of a controlled substance, charges that arose in the January drug raid, and was sentenced to serve a term of confinement of eight years in the Institutional Division of the Texas Department of Criminal Justice. Carl was incarcerated at the time of the trial.

On March 28, 2013, after Amber had made significant progress on her service plan, the children were returned to her as part of a monitored return. However, the children were quickly removed and placed back in foster care. The return of the children to foster care was precipitated by a shoplifting incident at the Dollar General Store in Dimmitt, Texas. While Amber had two of the children with her, she was seen inside Dollar General in the general accompaniment of Ishmael, Ruben, and another person, all three of whom were involved in shoplifting from the store. Ishmael and Ruben are two of the individuals arrested in the second drug bust at Amber's home. No charges were filed against Amber; however, she did receive a criminal trespass notice. This incident occurred on March 27, 2013; however, the Department did not learn of this incident until April 5, 2013, after the children had been returned for a monitored return. The record reflects that Amber never notified the Department of the incident at the Dollar General Store.

In a visit to Amber's home shortly after the incident at Dollar General, McClure discovered two people living in the home who were not approved to be living there.

4

According to McClure, when the children were returned to Amber's care, Amber agreed that no other individuals would live in the home. At that same visit, Amber advised McClure that all three children were with her but, when confronted with the fact that this was not true, Amber simply said she lied because she was afraid it would look bad.

Based upon the continued association with individuals who were involved with criminal activity and Amber's own dishonesty with the Department, the Department removed the children and Amber was required to begin counseling again with Sonya Higgins. The new requirement for counseling was to be eight sessions. In the final analysis, Amber only attended two of the eight sessions. Amber's excuse for her non-attendance at the counseling sessions was that she lacked any transportation.

The trial court heard the testimony of the Department's witnesses and that of Amber. At the conclusion of the testimony, the trial court found that Amber and Carl had committed the predicate acts alleged against them and that termination of their respective parental rights was in the best interest of the children. Accordingly, the trial court entered an order terminating the parental rights of Amber and Carl, and this appeal ensued.

The issues presented by the appeals of Amber and Carl deal with the sufficiency of the evidence, legally and factually, to support either the predicate acts alleged by the Department and the best interest finding by the trial court. Additionally, Carl contends that the section 161.001(1)(Q) is constitutionally invalid on its face and as applied to him. Disagreeing with Amber and Carl's positions, we will affirm the judgment of the trial court.

## Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

6

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed

evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Applicable Law and Analysis

Predicate Acts

The trial court found that the evidence supported termination of Amber's and Carl's parental rights based upon subsection (D)'s endangering environment or conditions and subsection (E)'s endangering conduct. *See* § 161.001(1)(D), (E). Evidence concerning subsections (D)'s and (E)'s statutory grounds for termination is interrelated; therefore, we will consolidate our review of the evidence supporting these grounds.[3] *See In re N.K.,* 399 S.W.3d 322, 329 (Tex. App.—Amarillo 2013, no pet.); *In re I.G.,* 383 S.W.3d 763, 770 n.6 (Tex. App.—Amarillo 2012, no pet.). Endangerment of the child's physical or emotional well-being is an element of both subsections (D) and (E). *See* § 161.001(1)(D), (E); *see also In re N.K.,* 399 S.W.3d at 329–30.

"[E]ndanger" means "to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means

---

[3] Indeed, this Court has observed the interrelated nature of evidence that could support these two statutory grounds for termination: "Although the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering 'environment.'" *In re D.R.J.,* No. 07-08-00410-CV, 2009 Tex. App. LEXIS 5231, at *7 (Tex. App.—Amarillo July 8, 2009, pet. denied) (mem. op.) (citing *In re D.T.,* 34 S.W.3d 625, 633 (Tex.App.—Fort Worth 2000, pet. denied)). That is not to say, however, that the two subsections require the same evidence. *See In re U.P.,* 105 S.W.3d 222, 236 n.7 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (discussing the distinctions between subsections (D) and (E)).

8

more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.; see In re P.E.W.,* 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.) (observing that child "need not develop or succumb to a malady" in order to prove endangering conditions). In our review, we not only look at evidence regarding the parent's active conduct, but we also consider evidence showing the parent's omissions or failures to act. *In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.— Texarkana 2003, pet. denied). The Texas Supreme Court has reiterated that endangering conduct is not limited to actions directed toward the child: "It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009); *see In re T.N.,* 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.)

Analysis of Carl's Arguments

Carl's position on appeal seems to be that the evidence does not show any direct harm to the children and, thus, the Department has not proved endangerment. This coupled with the fact that Carl has made significant strides in his efforts to provide supervision and a safe environment for the children prior to his incarceration means that the Department has not met its burden of proving the predicate behavior by clear and convincing evidence. *See In re J.F.C.,* 96 S.W.3d at 263; *see* § 161.206(a) (West 2008).

However, Carl's position simply ignores certain facts. First, Carl minimizes the effect of his conviction for possession of a controlled substance. The record further reflects that the children were present in the home when a drug raid occurred and Carl was arrested and that marijuana and cocaine were found in the home. Even after his arrest for possession of controlled substances, Carl had his family in the home when several members were in possession of various controlled substances. We know this to be because the record reflects that a second drug raid on Carl's home resulted in the arrest of several members of his family for various drug offenses. Even if we assume that Carl is correct and the record shows no actual injury to any child, this is of no avail to him. The law does not require that a child suffer actual injury; rather, it is enough when the parental conduct produces an endangering environment. *See In re D.R.J.*, 2009 Tex. App. LEXIS 5231, at *8. In fact, a parent's abuse of drugs while having custody of children supports termination under section 161.001(1)(E). *See In re J.O.A.*, 283 S.W.3d at 346. Additionally, unlawful conduct by persons who live with the child or with whom the child must associate on a regular basis is a part of the child's conditions or surroundings for purposes of section 161.001(1)(D). *See In re C.L.S.E.H.*, No. 02-10-00475-CV, 2011 Tex. App. LEXIS 6853, at *11 (Tex. App.—Fort Worth, no pet.) (mem. op.) (citing *In re D.T.,* 34 S.W.3d at 632).

Thus, the record demonstrates that Carl was not providing proper supervision or a safe environment for the children. Therefore, the trier of fact could form a firm belief or conviction that Carl's parenting fostered an endangering environment and he allowed or took part in endangering conduct. *In re J.F.C.,* 96 S.W.3d at 266. Accordingly,

10

Carl's issues regarding the legal and factual sufficiency of the evidence to support termination under section 161.001(1)(D) and (E) are overruled.

Carl contends that he had made substantial progress on his ability to provide a safe environment for the children prior to his incarceration. While it is true that Carl did many of the tasks required of him by the court, another fact is equally true. Carl does not contend he completed the plan, and the Department does not allege failure to complete the plan as a predicate ground for termination of Carl's parental rights. It was up to the trier of fact to weigh this fact of Carl's efforts in deciding whether to terminate his parental rights. It should be remembered that had the Department alleged section 161.001(1)(O) as a ground for termination partial compliance is not sufficient to defeat such an allegation. *In re I.G.,* 383 S.W.3d at 771.

Because only one of the statutory predicate grounds for termination need be proved to support a termination order, we do not reach Carl's issue regarding section 161.001(1)(Q). *See In re A.V.,* 113 S.W.3d at 361. Accordingly, we express no opinion regarding Carl's issue on that subject.

Analysis of Amber's Arguments

Our review of the record reveals that the facts regarding the two drug raids which were discussed under the section of this opinion regarding Carl are applicable to Amber with the exception that the individuals arrested at the time of the second raid were Carl's relatives and not Amber's. That factual distinction aside, we are still faced with the children residing in a home where drugs were apparently routinely present.

11

In addition to those facts, the trial court had before it testimony that directly implicated whether Amber could or would change her method of parenting to provide for more suitable supervision and direction of the children so as to eliminate the endangering aspects of the home life. Specifically at issue are two incidents that either occurred shortly after the Department allowed the children to return to Amber under a monitored return or the Department found out about shortly after the monitored return.

The incident at the Dollar General Store occurred before the monitored return, but the Department did not find out about it until after the monitored return. Amber contends that she did not participate in the shoplifting at the Dollar General Store and did not know about it. However, it is worth observing that the individuals who were directly involved in the incident were some of the same individuals who were arrested at the time of the second drug raid. Amber's testimony was not that she was not at the Dollar General when the shoplifting took place, but rather, she did not participate in or know about it. In connection with investigating the shoplifting incident, the Department went to Amber's residence to visit with her about it and discovered that two people were living in the home with Amber of whom the Department had no knowledge and not approved to be there. This was in violation of the Department's agreement with Amber that no other individuals would be living in the home. Further, at that same meeting Amber was asked where the children were, and she advised the Department caseworker that all three were at home when, in fact, M.Y.G. was not at home. These incidents reflect upon the credibility of Amber's testimony before the trial court. Remembering that the trial court was acting as the factfinder and, as such, is the sole judge of the credibility of the witnesses and the weight to be given their testimony, these

incidents of less-than-truthful statements by Amber undercut her allegations of no knowledge about the events at the Dollar General Store. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex. 2005).

In the final analysis, we are faced with a situation regarding Amber where drugs are in the home and drug usage occurs when the children are in the home. Despite contending that she has changed and those influences are no longer present, Amber continues to associate with the same people who provided the impetus for the second drug raid. Although she claims no knowledge of or participation in the shoplifting, the trial court has heard testimony about Amber's less-than-truthful dealings with the Department. Under this factual scenario, the trial court could have chosen to believe the Department's version of the events and totally discounted Amber. *See id.* In so doing, the factfinder could have formed a firm belief or conviction that Amber created an endangering environment and engaged in endangering conduct. *In re J.F.C.,* 96 S.W.3d at 266. Accordingly, Amber's issues regarding the legal and factual sufficiency of the evidence to support termination under section 161.001(1)(D) and (E) are overruled.

### Best Interest of the Children

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best

interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* § 263.307 (West 2008) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.*, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. *See In re C.H.*, 89 S.W.3d at 27. No one *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.,* 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.) The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the children

warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

Analysis

Before beginning the analysis, a recounting of the testimony needs to be set forth as it impacts the best interest of the children. The record before this Court is one of drug possession, drug dealing, and drug usage by Carl, with Amber's knowledge and participation in at least the drug usage. All of this occurred in the home with the children present. Subsequently, Carl's family was in the home when another drug raid ensued, again with the children apparently present. After the children were removed to the paternal grandmother, she turned them back over to the parents who knew they were not to have unsupervised visitation or custody of the children as per their agreement with the Department. Yet, no effort was made to advise the Department of this development.

Carl was subsequently sent to ID-TDCJ for eight years and will have no meaningful contact with the children during that period. The caseworker testified that, although Carl took steps to complete the family plan prior to incarceration, he has not been able to complete any further services. Additionally, and probably more importantly, Carl has not made any efforts to make any arrangements for the care of the children should they be returned to the family. Instead, Carl has apparently left all of these arrangements up to Amber.

Regarding Amber, the record indicates a pattern of poor choices and less-than-honest dealings with the Department. Initially, there was the aforementioned regaining

possession of the children from the paternal grandmother against the express directions of the court and the Department. Next, the act of hiding this information does not speak well for Amber. After that incident, she appeared to be completing the steps necessary to regain custody of the children and, in fact, subsequently was allowed custody on a monitored return. Yet, before the monitored return even took place, Amber was involved in the shoplifting incident at Dollar General. Though Amber protests she knew nothing about the shoplifting, the fact that those involved were the same family members arrested in her home during the second drug raid brings in to question her candor and her ability to make sound judgments. Additionally, again Amber failed to apprise the Department of the incident at Dollar General. After this incident, the children were again placed in the Department's care, and Amber was required to reinitiate counseling. She was asked to attend eight sessions. The record establishes that she attended only two sessions. Amber subsequently contended that she did not attend the other sessions because she did not have transportation. Yet, during the time she failed to attend counseling, Amber had requested her visitation with her children be moved to another date so that it would not conflict with her counseling. In testimony at the final hearing, Amber had only the most vague plans about moving to Lubbock to get away from the negative past. However, she had made no inquiries about a job or a place to live. The caseworker testified that the home Amber was living in was not clean and did not have food to support Amber and three children. All of this brings the stability of any arrangements Amber might claim to be making into serious question.

Desires of the Children

The desires of the children are the first *Holley* factor listed, and we shall consider it first. The trial court heard testimony that the children want to return to their parents. While we must certainly factor in the children's desires, those desires are not allowed to overrule their physical safety and emotional health. *See In re R.M.*, No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239, at *19-20 (Tex. App.—Amarillo Dec. 12, 2012, no pet.) (mem. op.) (citing *In re W.S.M.,* 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.)). Thus, we will consider the children's request; however, such a request militates only slightly against the trial court's best interest finding.

The Emotional and Physical Needs of the Children Now and in the Future
The Emotional and Physical Danger to the Children Now and in the Future

The next two *Holley* factors will be considered together. As previously noted, the evidence that proves the predicate acts may also be used to support the trial court's best interest finding. *In re D.S.*, 333 S.W.3d at 384. Further, a parent's future conduct may be measured by his or her past conduct. *Id.* The record clearly supports that the emotional and physical needs of the children were not being met in the past and, in fact, those needs were in danger. The record further supports a conclusion that neither Carl nor Amber have any definitive plans regarding the children in the future. Carl, apparently because of his current incarceration status, has voiced no plans. Amber has voiced only the most general and vague plans. The problem with accepting Amber's vague plans at face value is that her conduct demonstrates an inability to follow through with any plans or to stop the behaviors that have led to the current situation. It is recognized that past behavior may be used to measure a parent's future conduct when

17

making a best interest determination. *See In re D.S.*, 333 S.W.3d at 384. Therefore, the emotional and physical needs in the past and the future and the emotional physical danger in the past and the future strongly support termination as in the best interest of the children. We are also reminded that it is up to the factfinder to resolve conflicts in testimony. See *In re J.F.C.*, 96 S.W.3d at 266. These two *Holley* factors are strongly weighed in favor of the trial court's ruling regarding the best interest of the children.

Stability of the Home or Proposed Placement

The issue of the stability of Carl and Amber's home was thoroughly discussed in the previous portion of this opinion. There is virtually no stability in the home of Carl and Amber. The case worker testified that the only way to seek true permanency was through adoption and that this should occur sooner rather than later. This, in turn, supports a finding that the best interest of the children would be served by termination.

The Parties' Plans for the Children

Again, the record demonstrates that Carl has no real plans and that Amber's plans are vague at best. Her fall back plan, obtaining a job at the cafeteria where the children attend school, was at best illusory. Amber had not sought employment and did not testify to any facts that she would be able to gain that employment. The Department's plans were far more definite and more suitable to permanency for the children. The Department had located two potential adoptive families who were interested in adopting the children. This factor strongly supports that termination is in the best interests of the children.

From a review of these *Holley* factors, it is clear that the trial court had sufficient testimony and facts before it upon which to find by clear and convincing evidence that termination was in the best interests of the children. *In re J.F.C.,* 96 S.W.3d at 266. Accordingly, Carl's and Amber's issues to the contrary are overruled.

Conclusion

Having overruled all of Carl's and Amber's issues regarding the sufficiency of the evidence to support termination and the best interests of the children, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice