**Opinion issued January 22, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00782-CV

———————————

## IN THE INTEREST OF L.D.A. AND D.D.A., CHILDREN

On Appeal from the 312th District Court
Harris County, Texas
Trial Court Case No. 2000-25529

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's judgment terminating the parental rights of D.G. to her sons, L.D.A. and D.D.A. In a single issue, D.G. contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest. We affirm.

## Background

The Department of Family and Protective Services first removed D.G.'s children from her care in 1999 and 2000. Stephanie Archer, the Department caseworker, and Etta Pickett, the Child Advocate, testified that D.G.'s older children were removed in 1999 and 2000—before D.D.A. and L.D.A. were born—after her older son alleged that D.G. had physically abused him. When her children were removed at that time, D.G. participated in the Department's services.

L.D.A. and D.D.A. first came under the Department's care in November 2012. On November 5, 2012, T.A., the older sister of L.D.A. and D.D.A., reported that D.G. physically abused her. Two days later, the Department filed a petition seeking conservatorship of L.D.A. and D.D.A. and termination of D.G.'s parental rights. The court appointed the Department as temporary managing conservator, and the children were placed in foster care. The family service plan reflects that T.A. was afraid of D.G., that D.G. physically abused T.A., and that T.A. had marks and bruises on her arm. The plan also reflected that D.G. used drugs and that L.D.A. reported a year earlier that D.G. had hit him in the face with a belt, causing him to bleed. The plan includes T.A.'s statement that D.G. smoked marijuana while the children were present in the home and indicates that D.G. admitted to using marijuana. D.G. signed the family service plan in December 2012, setting

2

forth the steps she needed to accomplish to prevent termination of her parental rights.

Soon after L.D.A. and D.D.A. were removed from D.G.'s care in 2012, D.G. tested positive for P.C.P. D.G. denied using P.C.P., but admitted to smoking marijuana and conjectured that the marijuana was laced with P.C.P.

The 2012 family service plan instructed D.G. to comply with several tasks and services, including participating in outpatient drug treatment, NA/AA meetings, random drug testing, a drug assessment, and counseling to focus on the "impact of drug abuse on her life and children, and also her role and responsibility in this current CPS case." Because D.G. completed all required services, L.D.A. and D.D.A. returned to D.G.'s home in March of 2014.

In August 2014, the Department discovered that D.G. tested positive for cocaine in two random drug tests in July and August 2014. As a result, the Department removed the children on August 22, 2014 and placed D.D.A. in foster care. At that time, L.D.A. was in juvenile detention because he had stabbed his sister with a pocket knife. A bench trial commenced on August 26, 2014, and the Department requested the trial court terminate D.G.'s parental rights to D.D.A. and L.D.A.

At trial, Bruce Jefferies, an expert in interpreting drug test results, testified that D.G.'s test results from July and August 2014 indicate that she had used

cocaine more than once in the 90–100 days before the test dates. But D.G. denied using cocaine. She testified that she may have tested positive because she had been intimate with a man who had used cocaine. But Jefferies testified that D.G. having sexual relations with that man could not have led to her hair testing positive for cocaine.

During trial, D.G. voluntarily participated in an independent drug test, which was positive for cocaine. The trial court noted that the test result "very much brings the credibility of her overall testimony as to all matters on final trial greatly into doubt [because that] was a result obtained on her own by [D.G.]. It wasn't a random test by the court."

The Department's caseworker, Archer, and the Child Advocate, Pickett, both testified that they did not know of any additional services that the Department could offer D.G. Archer testified that the fact that D.G. tested positive for cocaine after completing the 2012 family plan of service indicates that D.G. "did not fulfill or follow the plan that was provided for her." Archer also testified that there were no other services that the Department could offer D.G. that she had not already worked, which factored into the Department's termination request. According to Pickett, D.G. was offered "adequate services" to address the problems that caused the children came into care, and Child Advocates did not know of any other services that could be offered to D.G.

4

The trial court also considered evidence that L.D.A. and D.D.A. had behavioral problems and were diagnosed with mood disorders. L.D.A has been diagnosed with A.D.H.D., A.D.D., and bipolar disorder. D.D.A. has been diagnosed with A.D.H.D and a reading disorder. Both children take medication for their disorders. Archer testified that the children had behavioral problems at school and at home while they were in foster care and once they returned home. Archer and Pickett, however, both testified that the children's behavior at home improved when they returned to D.G.'s home.

Nevertheless, after they returned to D.G.'s home, the children continued to experience problems at school. Archer and Pickett both testified that L.D.A. and D.D.A. displayed aggression and behavioral problems. Archer and Pickett testified that L.D.A.'s behavior at school remained the same, and Archer testified that D.D.A.'s behavior at school worsened. Pickett testified that the children threatened previous foster parents, fought at school with others, and fought each other. Further, D.G. testified that L.D.A. had been suspended from school five times and D.D.A. had been suspended twice since they returned to her care in March of 2014.

Despite D.G.'s history of drug use and physical abuse, as well as the children's behavioral problems, Archer and Pickett both testified that, in their opinions, D.G.'s rights should not be terminated. Pickett testified that returning

home to D.G. had a positive effect on the children and that they had a "wonderful" and "nurturing" relationship.

Further, L.D.A. and D.D.A. wanted to remain in D.G.'s care. Archer testified that the children "both indicated multiple times they wanted to be placed home [with D.G.]," and that she believed that they are happy when home with D.G. Pickett also testified that the children expressed to her that they wanted to remain with D.G.

The trial court also considered evidence that the Department planned to request that it be named the children's conservator to ensure that they receive necessary help. At the time of trial, D.D.A. was in a foster placement and L.D.A. was in juvenile detention. There was evidence that D.D.A. was doing well in foster care and that the Department had contacted relatives and "fictive kin," with whom the children could be placed. T.A.'s caregivers and D.G.'s aunt both expressed interest in having D.D.A. placed with them.

## Termination of Parental Rights

In a single issue, D.G. contends that there is legally and factually insufficient evidence to support the trial court's finding that termination of her parental rights was in the children's best interest.

## A.    Standard of Review

Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In a legal-sufficiency review in a parental-rights-termination case, the appellate court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the

Department bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 266.

## B.    Applicable Law

A strong presumption exists that a child's best interest is served by maintaining the parent-child relationship. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). In a case to terminate parental rights under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014).

In *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), the Texas Supreme Court provided a nonexclusive list of factors that the factfinder in a termination case may use in determining the best interest of the child. *Id.* at 371–72. These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now

8

and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and the Department need not prove all factors as a condition precedent to parental termination. *In re C.H.*, 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide a safe environment, we consider several additional factors, including (1) the child's age and vulnerabilities; (2) developmental evaluations of the child's parents, other family members, and others who have access to the child's home; (3) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (4) willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with agency supervision; (5) the willingness and ability of the child's family to effect positive changes

9

within a reasonable period of time; and (6) whether the child's family demonstrates adequate parenting skills. *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. FAM. CODE ANN. § 263.307(b) (West 2014)). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28.

## C.   Analysis

D.G. contends that the evidence was insufficient to support the trial court's finding that termination is in the children's best interest because there was evidence that she had a positive influence on her children, that her children loved and wanted to live with her, and that the Department had not yet found an available placement for L.D.A. at the time of trial. We conclude that the evidence is legally and factually sufficient to support the trial court's finding that termination of D.G.'s parental rights was in L.D.A. and D.D.A.'s best interest.

### *Evidence supporting trial court's best interest finding*

Under the second and fourth *Holley* factors, we consider the evidence of L.D.A. and D.D.A.'s present and future emotional and physical needs and the evidence regarding D.G.'s ability to parent and provide for their needs. *See Holley*, 544 S.W.2d at 372. The record reflects that both L.D.A and D.D.A. have special needs—both were diagnosed with and take medication for A.D.H.D., and

10

L.D.A. also has been diagnosed with bipolar disorder. Both children displayed aggressive behaviors while in foster care and both had significant behavioral problems at school both while in the Department's care, and after returning home to D.G., causing both children to be suspended from school numerous times since returning home to D.G. Additionally, L.D.A. stabbed his older sister while he was living with D.G. Further, there is strong evidence that D.G. used illegal drugs before the Department removed the children from her care and that she continued to use drugs once they returned to her care. Pickett testified that "Child Advocates ha[d] grave concerns after hearing the drug test results that [D.G.] should be allowed to care for her children," and that she was concerned that D.G. would "be able to meet [the children's] needs" because "their needs [were] high." Thus, the evidence regarding these factors supports the trial court's finding that termination of D.G's parental rights was in the children's best interest. *See In re O.R.F.*, 417 S.W.3d 24, 39–40 (Tex. App.—Texarkana 2013, pet. denied) (evidence of mother's long history of drug abuse demonstrated that it would be difficult for mother to meet child's high emotional needs, which required therapy because child had difficulty focusing, trusting and bonding, and developing healthy social relationships); *In re A.C.*, 394 S.W.3d at 642 ("[P]attern of illegal drug use suggests the mother was not willing and able to provide the child with a safe environment—a primary consideration in determining the child's best interest.").

Under the third and eighth *Holley* factors, we consider evidence of the emotional and physical danger to L.D.A. and D.D.A. now and in the future and the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one. *See Holley*, 544 S.W.2d at 372. We note that evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See In re A.M.*, 385 S.W.3d at 82. Here, the trial court had before it evidence that D.G. was physically abusive. D.G.'s family service plan includes the details of T.A.'s allegation that D.G. hit T.A. with an extension cord, causing bruising and lacerations to T.A.'s arm, as well as L.D.A.'s statements that D.G. had hit him with a belt the year before, causing bleeding. Additionally, D.G.'s older children were removed from her care in 1999 and 2000 because of allegations that she had physically abused another son.

The trial court also considered evidence that D.G. used drugs. D.G.'s family service plan includes T.A.'s statement that D.G. smoked marijuana at home while her children were present. D.G. also tested positive for P.C.P. soon after the children were removed in 2012. And D.G.'s hair tested positive for cocaine three times since the children returned to her care in 2014. Accordingly, we conclude that the evidence related to the third and eighth factors supports the trial court's best interest finding. *See Walker v. Tex. Dept. of Family & Protective. Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug

use may support a finding of endangerment because it exposes the child to the possibility that the parent may be impaired or imprisoned); *Rochelle v. Dep't of Family & Protective Servs.*, Nos. 01-05-00311-CV, 01-05-00312-CV, 2006 WL 305002, at \*8 (Tex. App.—Houston [1st Dist.] Feb. 9, 2006, no pet.) (mem. op.) (evidence of physical abuse, including of siblings, relevant to best interest determination).

Under the fifth factor, we consider the programs available to assist D.G. to promote the best interests of L.D.A and D.D.A. *See Holley*, 544 S.W.2d at 372. D.G. first participated in services following abuse allegations in 1999 and 2000. The Department again provided D.G. with services after T.A.'s reporting of abuse in 2012. Despite participating in those services, D.G. tested positive three times for cocaine in 2014, after L.D.A. and D.D.A. returned to her home. Further, Archer testified that D.G.'s positive test results indicated that she did not follow the services that the Department had provided, and Pickett testified that the services had been "adequate" to help D.G. stop using drugs. Archer and Pickett both testified that there were no other services that the Department could offer D.G. Because D.G. continued to use drugs after participating in programs and there are no additional programs available to assist D.G. to promote the best interest of her children, we conclude that the fifth factor supports the trial court's best interest finding. *See* TEX. FAM. CODE ANN. § 263.307(b)(10)–(11) (best

interest determination informed by parent's willingness and ability to accept and complete services and effect positive change within reasonable time period); *In re. J.R.W.*, No. 01-14-00442-CV, 2014 WL 6792036, at *8 (Tex. App.—Houston [1st Dist.] Nov. 26, 2014, no pet.) (mem. op.) (mother's inability to refrain from drug use despite having completed substance abuse treatment reflected an inability to perceive danger that parental drug use poses to a child).

With respect to the ninth *Holley* factor—excuses for the acts or omissions of the parent—the evidence supports the trial court's finding that termination is in the children's best interest. *See Holley*, 544 S.W.2d at 372. The record reflects that D.G. failed to offer any excuses for her drug use and abusive conduct. Rather, D.G. denied any drug use and only admitted to any use after first testing positive for P.C.P. When she tested positive for cocaine in 2014, D.G. again denied having used drugs. Pickett testified that "Child advocates has been concerned since the initiation of this assignment with [D.G.] accepting responsibility for why the kids were in care and now she's not accepting responsibility for the positive drug test." Similarly, D.G. denied hitting T.A. and L.D.A., and she provided no excuses or explanation. We thus conclude that the ninth *Holley* factor supports the trial court's best interest finding.

Viewing all of this evidence in the light most favorable to the trial court's judgment, we conclude that a reasonable trier of fact could have formed a firm

belief or conviction that termination of D.G.'s parental rights was in L.D.A. and D.D.A.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, there is legally sufficient evidence to support the trial court's best interest finding.

### *Evidence contradicting trial court's best interest finding*

Some of the evidence regarding the first, sixth, and seventh *Holley* factors—the children's desires, the Department's plans for the children, and the stability of the home or proposed placement—does not support the trial court's best interest finding. The record reflects that L.D.A. and D.D.A. wish to continue to live with D.G., and Archer and Pickett testified that the children bonded with D.G. and wanted to stay there. But "[e]vidence that a child loves a parent, enjoys visits, and shows affection is marginally relevant." *In re A.M.*, 385 S.W.3d at 82 (citing *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.)); *see In re M.Y.G.*, 423 S.W.3d 504, 514 (Tex. App.—Amarillo 2014, no pet.) (children's desires to return to their parents were "not allowed to overrule their physical safety and emotional health").

Other evidence also contradicts the trial court's best interest determination. Pickett and Archer testified that termination was not in the children's best interest, the Department had not found permanent homes for L.D.A. and D.D.A. at the time of trial, D.G. completed numerous tasks from her service plan, and the children's desire to remain in D.G.'s care.

While D.G. presented some evidence that contradicts the trial court's best interest finding, after considering the entire record, we nonetheless conclude that—taken with the evidence in favor of termination, especially evidence of D.G.'s drug use and inability to meet the children's needs—a reasonable factfinder considering all the evidence could have formed a firm belief or conviction that termination was in L.D.A. and D.D.A.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266; *see In re C.H.*, 89 S.W.3d at 28 ("[T]he lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor [in a best interest analysis].").

We overrule D.G.'s sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.