

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00069-CV

IN THE INTEREST OF B.E.T., A CHILD

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2013-422

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

The trial court terminated Evelyn's[1] parental rights to her nine-year-old daughter, B.E.T., after finding that termination was warranted under Section 161.001(1)(D) and (E) of the Texas Family Code. Evelyn appeals this ruling, contending the evidence was legally and factually insufficient to support the trial court's findings. After reviewing the record, we affirm the trial court's order.[2]

## I.  Standard of Review

A trial court's order terminating parental rights is reviewed as follows:

> The termination of parental rights under the Texas Family Code requires proof by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(1). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). When the legal sufficiency of evidence is challenged on appeal, it is the duty of the appellate court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. In an appeal, "we assume that the [fact-finder] resolved disputed facts in favor of its finding if a reasonable fact-finder could do so, but 'disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible.'" *In re K.W.*, 335 S.W.3d 767, 770 (Tex. App.—Texarkana 2011, no pet.) (quoting *In re J.O.A.*, 283 S.W.3d 336,

---

[1]We will refer to the appellant mother by the pseudonym Evelyn and to the child by her initials, B.E.T., to protect the child's privacy. *See* TEX. R. APP. P. 9.8.

[2]To terminate a party's parental rights, the trial court must find, by clear and convincing evidence, that (1) one of the statutory grounds supports termination and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014). Although a court could find that the statute supports termination but also that termination is not in the child's best interest, a court cannot find that termination is in the child's best interest unless it first finds that the statute supports termination. Thus, although Evelyn does not challenge the trial court's finding that termination is in the child's best interest, if we were to find the evidence insufficient to support both predicate statutory grounds, termination would not be warranted. *See In re U.P.*, 105 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). As explained below, however, we find the evidence sufficient to support the trial court's findings on the statutory allegations.

344 (Tex. 2009)). "'If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

*In re R.T.M.*, No. 06-14-00063-CV, 2014 Tex. App. LEXIS 12935, at *1–3 (Tex. App.— Texarkana Dec. 4, 2014, no pet. h.).

## II.    Evidence Supporting Termination

### A.    Evidence of Drug Use and Violence in the Home

By her own admission, Evelyn, who was forty-eight at the time of trial, was a lifetime abuser of alcohol and crack cocaine. She had been drinking alcohol since age sixteen. She began using crack cocaine at age twenty-seven. She went as long as four years without using cocaine, but by age thirty-five had resumed use of the narcotic. In 2006, the Texas Department of Family and Protective Services (the Department) temporarily removed B.E.T. from the home, but Evelyn continued to use alcohol and drugs after B.E.T. returned home.[3] Evelyn did state, however, that her use was reduced "[c]onsiderably." At trial, Evelyn testified that she had been drug-free fifteen months and had been attending Alcoholics Anonymous (AA) meetings regularly for about thirteen months.

---

[3]June Combest-Tyler, a case supervisor with Child Protective Services (CPS), a division of the Department, testified that an investigation or case had been initiated in November 2006, after the Department received allegations of neglectful supervision of B.E.T. by Evelyn. That case was resolved when Evelyn agreed to sign over conservatorship of B.E.T. to a relative; Evelyn was not to have unsupervised visits with the child. The current case began when the Department received reports of Evelyn "using drugs to the point of being incapacitated and staying in bed and not able to supervise" B.E.T. and "concerns that they were living in an RV and that it was winter at the time and there was no adequate heat." The record does not explain how B.E.T. came to live with Evelyn after the 2006 case was resolved.

3

For some time prior to the Department's most recent removal of B.E.T. from the home, Evelyn lived with her paramour, Gregory Parker. Despite Parker's habit of staying up late into the night smoking marihuana, Evelyn left B.E.T. in Parker's care when Evelyn went to work. Although Parker slept most of the day, Evelyn claimed that Parker was able to stay up three hours in the mornings when he was caring for B.E.T. During this time, he fed B.E.T. and took her to his sister's, who then kept the child.

Evelyn acknowledged that she and Parker had smoked crack cocaine in the past, yet she insisted they never engaged in this conduct in front of B.E.T. Evelyn explained that B.E.T. could identify a crack pipe because she had seen someone smoking crack in a movie. Evelyn also explained that B.E.T. could describe someone rolling a marihuana cigarette because she had seen Parker doing so, but she added that she had forbidden him from doing so in front of B.E.T. Nevertheless, Evelyn claimed to have been free of drugs and alcohol for more than a year prior to trial.[4]

B.E.T. lived with her half-sister, Tina Roland, after the current removal. Roland testified that B.E.T. had "witnessed her mom smoking crack with a little pipe and [Evelyn and Parker] taking pills and smoking weed . . . . She said it was a funny-looking cigarette. She thinks it was weed." B.E.T. told Martha Dykes, program director of the Northeast Texas Children's Advocacy Center (CAC), that one of Evelyn's friends smoked "weed" and that Evelyn had held B.E.T.'s nose to keep her from breathing it.

---

[4]Evelyn also had her AA sponsor testify to her dedication and success in working on her recovery process.

B.E.T. also told Dykes she knew Parker smoked "weed" and that Parker smoked weed in front of her frequently. B.E.T. said that on at least one occasion, Parker left her alone and went to another person's house to smoke weed. According to Dykes, B.E.T. also said that pills were scattered on the floor and on a table in Parker's house and that there was "weed everywhere"; that Parker smoked weed in his car, but that he did not have his car now because it was locked;[5] and that Parker "smokes in front of me, he does pills, he does drugs."

Evelyn agreed that her relationship with Parker was also violent. B.E.T. recounted one drunken fight between Parker and Evelyn where Evelyn swung a knife, cutting Parker and almost cutting B.E.T. Evelyn admitted having too much to drink on the night in question, but she thought she had been wielding a cake spatula at Parker rather than a knife. She also thought B.E.T. did not view the fight because she had gone to Evelyn's father's house. B.E.T. stated that Parker had choked her mother and "almost killed" her and that she had seen the two adults fighting on other occasions. Court Appointed Special Advocates (CASA) volunteer Shirley Griffin and Roland both said they felt B.E.T. was frightened of Evelyn as a result of the fight where Evelyn wielded a knife at Parker.

Approximately three months before the termination hearing, Evelyn pled guilty to a felony charge of endangering a child which arose when B.E.T. tested positive for cocaine.[6] *See*

---

[5]This correlates with Evelyn' testimony that Parker would go outside to smoke marihuana in his car when B.E.T. was in the house. Evelyn also testified that she did not think it unusual for a child of B.E.T.'s age to have such specific knowledge about illegal drugs.

[6]Several witnesses referenced a laboratory report showing the presence of cocaine in B.E.T.'s system. This report was admitted for the limited purpose of showing why the Department became involved in the case. Evelyn did not

5

TEX. PENAL CODE ANN. § 22.041 (West 2011). Evelyn claimed that Parker caused B.E.T. to test positive, but that the indictment had been filed against her because she was B.E.T.'s mother.

### B. Sexual Abuse Allegation

Dykes also testified about the interview she conducted with B.E.T. regarding an alleged sexual assault. A recording of the interview was introduced into evidence. In it, B.E.T. described sleeping in a bed with a male cousin, Allen Wesley, and an adult woman. B.E.T. claimed that Allen performed an act of sexual penetration upon B.E.T. and that this happened on multiple occasions.

B.E.T. later told Evelyn about a burning she was feeling in her vagina, and Evelyn examined her. Evelyn thought it might be the result of the soap B.E.T. was using, and she changed soaps. Evelyn said B.E.T. told her that Allen was sleeping on the floor with her when he rolled over and grabbed her. Evelyn thought B.E.T. had witnessed Allen having sex with a woman who was also in the bed or on the floor with Allen and B.E.T.

B.E.T. told Griffin she had reported Allen's assault on her to Evelyn, but that Evelyn would not listen to her. Evelyn claimed she had asked a doctor or nurse to examine B.E.T. during a routine visit "to know if anybody has poked, pried, inserted or touched [her] child," but nothing in the record substantiates this allegation. Yet, Roland later determined that the doctor Evelyn claimed to have consulted would not have been able to conduct a sexual-assault examination. Roland also said B.E.T. told her that a man stuck his "tee-pee" in B.E.T., making

---

object when various witnesses testified that B.E.T. had tested positive for cocaine, and she did not contest this allegation.

6

B.E.T. "feel like she had to use the rest room on herself." At trial, Evelyn said that many of the facts revealed at trial were new to her. She also believed B.E.T. had not told her everything about what happened with Allen. Yet, Dykes testified that criminal charges had been filed against Allen, and Evelyn said that she had agreed to cooperate in the prosecution.

### C. Other Aspects of B.E.T.'s Home Life

Additionally, several witnesses testified that Evelyn had placed controversial signs in her yard. Although the record does not disclose their content, Roland testified that B.E.T.'s classmates teased her about the signs and that it upset her. B.E.T.'s CPS case worker, Patricia Johnson, testified that the signs "scared the child half to death." According to Johnson, after Roland modified the route she took taking B.E.T. to school in an effort to shield B.E.T. from seeing the signs, Evelyn moved the signs to her father's yard to ensure that B.E.T. would see them.

Wilson Renfro, a psychologist who met and evaluated B.E.T., diagnosed her as having attention deficit and hyperactivity disorder (ADHD). Renfro said that this condition was best treated with medications, together with a stable home environment, steady parenting, and discipline. B.E.T. told Renfro that Evelyn had been physically abusive to her and that she had been sexually abused by a person named Allen when she was seven. Renfro opined that these experiences, combined with the presence of drug abuse, would obviously not be helpful to B.E.T.'s growth and development.

**III.    Evelyn's Challenges to the Evidence**

Although we will consider all the evidence before the trial court, we will first address three areas in which Evelyn alleges the evidence was insufficient. Evelyn first claims that the evidence that B.E.T. was sexually assaulted and that Evelyn knowingly entrusted B.E.T. to the alleged perpetrator was not clear and convincing. Nevertheless, B.E.T. gave a detailed description of sexual penetration by a man named Allen in her CAC interview with Dykes. Other witnesses testified that B.E.T. relayed these accusations to them. This was evidence a fact-finder could rely on to find that B.E.T. had been sexually assaulted. Similar evidence has been found sufficient to support a criminal conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014). Accordingly, the trial court could have found clear and convincing evidence that B.E.T. was sexually assaulted.

It is true that the record does not clearly and convincingly establish that Evelyn continued to leave B.E.T. in Allen's care after she learned about the sexual abuse. Evelyn testified that she ended contact with Allen and his girlfriend when B.E.T. told her about the sexual abuse. Although Dykes testified that B.E.T. said Evelyn sent her back to the Allen home after learning about the abuse, the interview between Dykes and B.E.T. does not reflect that statement. Evelyn's testimony on the issue was not clear. Nevertheless, whether Evelyn continued to expose the child to Allen is not important, though, because we find substantial evidence to justify the trial court's findings on the record as a whole.

8

Evelyn next argues there was no evidence that she exposed B.E.T. to cocaine. Evelyn testified that she and Parker did not use crack cocaine in B.E.T.'s presence. However, Roland testified that B.E.T. told her she had "witnessed her mom smoking crack with a little pipe and them taking pills and smoking weed."[7] The trial court, as fact-finder, could have believed Roland over Evelyn in resolving this conflict in testimony. Moreover, Evelyn pleaded guilty to child endangerment based on the presence of cocaine in B.E.T.'s system. Although she claimed at trial that Parker was to blame for this and that she was charged only because she was B.E.T.'s mother, the trial court could have reasonably disbelieved her trial testimony and relied upon her guilty plea. Accordingly, there is sufficient evidence to support the finding that Evelyn exposed B.E.T. to cocaine.

Finally, Evelyn argues that she did not know B.E.T. was present when she cut Parker with a knife. Although Evelyn said she thought B.E.T. had left the home when she told her to go to Evelyn's father's house, other evidence suggests she was present. B.E.T. told the trial court that she had witnessed the fight. Other witnesses testified that B.E.T. told them she saw the fight. B.E.T. told the trial court Evelyn almost hit her with the knife, and B.E.T. told CASA worker Griffin that she had been cut in the chin during the fight. The trial court could reasonably have discounted Evelyn's testimony and found that she knew her child was present when she cut Parker. Consequently, there is sufficient evidence supporting the trial court's findings in those three areas challenged by Evelyn.

---

[7]Presumably this referred to Evelyn and Parker; nobody lodged a hearsay objection.

## IV.    The Statutory Bases for Termination

### A.    Section 161.001(1)(D)

The evidence is also sufficient to support the trial court's other findings.  For example, evidence that Evelyn's relationship with Parker was characterized by alcohol, drug abuse, and physical violence, supports the trial court's first finding that Evelyn knowingly placed or knowingly allowed B.E.T. to remain in conditions or surroundings which endangered the child's physical or emotional well-being.  *See* TEX. FAM. CODE ANN. § 161.001(1)(D).  Most noteworthy was the fight in which Evelyn cut Parker with a knife and almost cut B.E.T.  While this was the most violent incident between the two of those recounted, there was testimony establishing this was not their only violent encounter.  In fact, the evidence supports the finding that their relationship was characterized by domestic violence.

Likewise, despite Evelyn's claim that she and Parker never used drugs when B.E.T. was present, she did not deny using drugs with Parker.  Although she theorized that B.E.T. ingested cocaine while she was alone with Parker, no other evidence substantiates that theory.  Roland said that B.E.T. told her she had seen Evelyn using illegal drugs.  There was also testimony B.E.T. was afraid of Evelyn after she cut Parker with a knife.  The inference that taking illegal drugs and drinking alcohol to excess while serving as a parent places the child or allows her to remain in conditions or surroundings that endanger the child's emotional or physical well-being is more than rational in this case.[8]  Furthermore, "unlawful conduct by persons who live with the child or with whom the child must associate on a regular basis is a part of the child's conditions

---

[8]B.E.T. also said in her interview with Dykes that on one occasion, Evelyn let B.E.T. drink beer.

10

or surroundings for purposes of section 161.001(1)(D)." *In re M.Y.G.*, 423 S.W.3d 504, 511 (Tex. App.—Amarillo 2014, no pet.) (considering, *inter alia*, parent's in-home association with drug offenders in finding parent created endangering environment). Use of illicit drugs by either Parker or Evelyn, or both, constitutes unlawful conduct.

Finally, "abusive or violent conduct by a parent or other resident of a child's home can produce an environment that endangers the physical or emotional well-being of a child." *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Similarly, "a parent's failure to remove himself and his children from a violent relationship endangers the physical or emotional well-being of the children." *In re I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.); *see also D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 354 (Tex. App.—Austin 1993, no writ), *disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267 (finding evidence of child's residence in unstable household where violence frequently occurred and where ex-felons engaged in ongoing criminal activity resided was sufficient to sustain termination based on finding parent allowed child to remain in surroundings that endangered physical or emotional well-being).

In summary, the circumstances of this case, whether considered in the aggregate or in any combination, could lead a rational fact-finder to find by clear and convincing evidence that Evelyn knowingly placed B.E.T. or knowingly allowed B.E.T. to remain in conditions or surroundings which endangered the child's physical or emotional well-being. Consequently, the evidence was legally and factually sufficient to support the trial court's finding that termination was warranted under Section 161.001(1)(D).

11

**B.      Section 161.001(1)(E)**[9]

The evidence is also sufficient to support the trial court's finding that Evelyn engaged in conduct or knowingly placed B.E.T. with persons who engaged in conduct that endangered the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). Evidence that Evelyn routinely left B.E.T. in Parker's care when she knew he was a regular abuser of crack cocaine and marihuana satisfies Section 161.001(1)(E). So does Evelyn's regular use of crack cocaine and marihuana. "Evidence of narcotics use and its effect on a parent's life and her ability to parent may establish that the parent has engaged in an 'endangering course of conduct.'" *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.— Houston [1st Dist.] 2006, no pet.) (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.").[10] Likewise, the previously discussed violent episodes between Evelyn and Parker to which B.E.T. was continually exposed is conduct that endangered B.E.T.'s physical and mental

---

[9]A single-predicate ground, under Section 161.001(1), is sufficient to uphold a trial court's decision to terminate a parent-child relationship where the trial court also made a finding that termination was in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will, however, also address Evelyn' contention that the evidence was insufficient to support the trial court's finding that the evidence satisfied the requirements of Section 161.001(1)(E).

[10]It is true that termination under subsection (1)(E) "must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required." Thus, the mere act of substance abuse does not satisfy subsection (1)(E). *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.— El Paso 2004, no pet.). Nevertheless, multiple acts and omissions demonstrating the requisite "voluntary and conscious course of conduct" by Evelyn are present here, and the trial court's ruling is clearly supported by the evidence.

well-being.  Consequently, sufficient evidence supports the trial court's findings that termination was warranted under Section 161.001(1)(E).

## V.      Conclusion

The trial court, having listened to the evidence and having resolved the conflicts in the testimony, could reasonably have formed a firm belief or conviction as to the truth of the Department's allegations.  Accordingly, we find that the evidence was legally and factually sufficient to support the trial court's findings that termination was warranted under Texas Family Code Section 161.001(1)(D) and (E).

We affirm the order of the trial court.


Ralph K. Burgess
Justice

Date Submitted:      December 16, 2014
Date Decided:        February 5, 2015

13