

In The
# Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-14-00399-CV

IN THE INTEREST OF S.V., K.V., AND E.V., CHILDREN

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL45-14, Honorable Delwin T. McGee, Presiding

March 24, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, George, the father of S.V., K.V. and E.V., appeals the judgment of the trial court terminating his parental rights to the named children.[1] The mother of the children, Deidra, had her parental rights terminated and has not appealed that judgment. George brings forth four issues in this appeal. He contends that the evidence was legally and factually insufficient to support the trial court's judgment that he (1) knowingly placed or allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children;[2] (2) engaged in

---

[1] We will refer to the appellant father as "George" and to the children by the initials S.V., K.V., and E.V. TEX. R. APP. P. 9.8.

[2] TEX. FAM. CODE ANN. § 161.001(1)(D) (West 2014).

conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children;[3] (3) knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for no less than two years from the date of filing of the petition;[4] and (4) that termination of his parental rights was in the best interests of the children.[5] We will affirm.

## Factual and Procedural Background

This is George's third involvement with the Department of Family and Protective Services (Department). The triggering event on this occasion was George's arrest for theft from a Walmart store in Abilene, Texas, while he had S.V. and E.V. in his care. When the store employees tried to stop George at Walmart, he fled with the children to a hotel where he was eventually arrested. As a result of George's latest involvement with law enforcement, the Department filed a petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship in the 326th District Court of Taylor County, Texas, on September 9, 2013. This case was then transferred to County Court at Law of Moore County, Texas, on February 24, 2014. Thereafter, all proceedings were held in Moore County.

During the trial, George testified that he had begun using methamphetamine again and had, the day before the theft incident, smoked marijuana with Deidra. The Department introduced evidence that all three of the children tested positive in a hair

---

[3] *Id.* § 161.001(1)(E).

[4] *Id.* § 161.001(1)(Q).

[5] *Id.* § 161.002.

follicle test for methamphetamine. George admitted that he smoked methamphetamine in the home where the children lived but contended that he never smoked methamphetamine in front of the children. The testimony at trial revealed that George had been a methamphetamine user for ten years.[6] According to George's testimony, his longest period of sobriety since he started using drugs has been nine months.

In addition to the issue of drug usage, the Department submitted a substantial amount of evidence relative to George's involvement with the criminal justice system. According to the testimony and exhibits, George had the following convictions: two separate felony convictions for forgery in 2004, for which he was placed on deferred adjudication; adjudication of both forgery cases based upon an admission of using methamphetamines; a conviction for evading arrest in 2005; a conviction for possession of methamphetamine in 2005 and a sentence of four years' incarceration; a conviction for theft in 2010; a conviction for evading arrest in 2011; a plea of guilty to felony evading arrest in 2012, for which he was placed on three years deferred adjudication; and a theft conviction in 2013.[7] In addition to the above mentioned convictions, George also had pending another theft and evading arrest charge. Since the current action by the Department had been pending, George, by his own testimony, had been incarcerated for all but two weeks of the case.

As stated above, this is the third time George had had interaction with the Department over his children. The first time was at the birth of S.V., when S.V. tested positive for methamphetamine. The child was placed with Deidra's sister and was

---

[6] The record reflects George started using methamphetamine when he was 21 years old and was 31 years old at the time of trial.

[7] This was the offense that resulted in the current case with the Department.

eventually returned to George and Deidra. After S.V. was returned to the family, George admitted that he resumed using methamphetamine on a daily basis. While George was incarcerated, K.V. was born. K.V. also tested positive for methamphetamine. The children, S.V. and K.V., were placed in the custody of the Department. The children were returned to George and Deidra in October 2012. The latest case was filed in September 2013. The trial court terminated George's parental rights and this appeal followed.

George contests the sufficiency of the evidence to prove the predicate acts alleged in the Department's petition for termination and found by the trial court to support termination. TEX. FAM. CODE Ann. § 161.001(1)(D), (E), (Q).[8]

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

---

[8] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or

5

conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Applicable Law and Analysis

Predicate Acts

The trial court found that the evidence supported termination of George's parental rights based upon subsection (D)'s endangering environment or conditions and subsection (E)'s endangering conduct. *See* § 161.001(1)(D), (E). Evidence concerning subsections (D)'s and (E)'s statutory grounds for termination is interrelated; therefore,

6

we will consolidate our review of the evidence supporting these grounds.[9]  *See In re N.K.,* 399 S.W.3d 322, 329 (Tex. App.—Amarillo 2013, no pet.); *In re I.G.,* 383 S.W.3d 763, 770 n.6 (Tex. App.—Amarillo 2012, no pet.).  Endangerment of the child's physical or emotional well-being is an element of both subsections (D) and (E).  *See* § 161.001(1)(D), (E); *see also In re N.K.,* 399 S.W.3d at 329–30.

"[E]ndanger" means "to expose to loss or injury; to jeopardize."  *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987).  Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury."  *Id.; see In re P.E.W.,* 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.) (observing that child "need not develop or succumb to a malady" in order to prove endangering conditions).  In our review, we not only look at evidence regarding the parent's active conduct, but we also consider evidence showing the parent's omissions or failures to act.  *In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied).  The Texas Supreme Court has reiterated that endangering conduct is not limited to actions directed toward the child: "It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."

---

[9] Indeed, this Court has observed the interrelated nature of evidence that could support these two statutory grounds for termination: "Although the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering 'environment.'"  *In re D.R.J.,* No. 07-08-00410-CV, 2009 Tex. App. LEXIS 5231, at *7 (Tex. App.—Amarillo July 8, 2009, pet. denied) (mem. op.) (citing *In re D.T.,* 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied)).  That is not to say, however, that the two subsections require the same evidence.  *See In re U.P.,* 105 S.W.3d 222, 236 n.7 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (discussing the distinctions between subsections (D) and (E)).

*In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009); *see In re T.N.,* 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.)

<u>Analysis</u>

Our review of the evidence convinces us that George has continued his methamphetamine-driven lifestyle during the lives of these children. This conclusion is supported by George's admissions during his testimony that his longest period of sobriety has been nine months. The conclusion is further buttressed by his admission that his and Deidra's entire relationship was built around methamphetamine use. Not only has the methamphetamine use been of long standing, it has resurfaced since the children were reunited with George in October 2012, as evidenced by his plea of true in a proceeding to adjudicate in September 2014. As part the adjudication proceeding, George admitted to violating his terms and conditions of community supervision by using methamphetamine on June 8, August 4, August 10, and August 16 of 2013. At the time he was arrested for theft in Abilene, George also admitted to using methamphetamine in the days before his arrest. Based upon this admission, hair follicle tests of the children's hair was performed and these tests returned positive for methamphetamine.

Drug use in the home is relevant evidence on the issue of endangerment. *See Dupree v. Tex. Dep't of Protective and Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A long history of drug use supports a finding that a parent has engaged in conduct that endangers a child. *See In re J.O.A.,* 283 S.W.3d at 346. It is also true that the conduct of a parent in the home can create an environment that endangers the physical or emotional well-being of a child under subsection D. *See In re*

8

*W.S.,* 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ.); *In re D.R.J.,* 2009 Tex. App. LEXIS 5231, at *7.

In addition to the evidence regarding George's drug usage, the evidence demonstrated that, for most of his children's lives, George had been in and out of various penal institutions. During the pendency of this last lawsuit, George had been incarcerated all but two weeks. While it is true that incarceration, in-and-of-itself, does not constitute endangering conduct, it is a factor when considering the issue of endangerment. *See In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). We have held that intentional criminal activity which exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of a child. *In re A.W.I.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)).

George's position is that much of the evidence regarding methamphetamine use around the children is the responsibility of Deidra. This is so, according to George, because, when the first two children tested positive for methamphetamine, he was either incarcerated at the time of their births or had been released from incarceration for only a short period of time. George then points to the efforts he has made to better himself since this case has been pending. Under this theory, the trial court either ignored this evidence or did not give it the amount of credence that George suggests is proper. However, the question of the steps George has taken to better himself is essentially a question of his credibility before the trier of fact. *See In re R.D.S.,* 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The trial court heard George's

testimony and had the right to weigh it and make a determination of how much, if any, to believe; to weigh said testimony; and draw reasonable inferences from it. *See id.* As a reviewing court, we do not second guess the trial court on these matters. *See id.*

When applying the proper standard of review to George's legal sufficiency argument regarding subsections (D) and (E), we find that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence to support the trial court's finding of the predicate acts under subsections (D) and (E), the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. Accordingly, George's issues to the contrary are overruled.

Inasmuch as only one predicate act is necessary to support a trial court's decision to terminate a parent-child relationship, we need not address the trial court's finding regarding subsection Q. *In re M.Y.G.,* 423 S.W.3d 504, 512 (Tex. App.—Amarillo 2014, no pet.) (citing *In re A.V.,* 113 S.W.3d at 361).

<u>Best Interests of the Children</u>

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now

and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* § 263.307 (West 2014) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.*, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. *See In re C.H.*, 89 S.W.3d at 27. No one *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.,* 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.) The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interests of the children warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

Analysis

We begin our analysis by reviewing the evidence before the trial court. George has had, and continues to have, significant issues with methamphetamine use. Not only did George use methamphetamines in the past, according to the record, this use continued after he had regained possession of the children. Indeed, the record reflects that in the days before the Department took custody of the children, George was using methamphetamines in the home on a continuous basis.

Additionally, there is the issue of George's incarceration. He was incarcerated at the time of trial and had been incarcerated for all but two weeks during the pendency of this suit. George's past conduct had resulted in his incarceration on numerous occasions. At the time of trial, George still had two cases pending in Taylor County. One case was a charge of theft and the other was for child endangerment. The record reflects there is a significant question about whether George would even be available to care for the children in the future.

At the time of trial, the children were residing with Kristen, Deidra's sister. Kristen had had the children placed with her each time the Department removed the children from George's custody. The record reflects that the children are very bonded to Kristen. According to the caseworker's testimony, Kristen is providing a stable home for the children that meets their emotional needs. The Department's position at trial was that the best interests of the children would be served by allowing Kristen to adopt the children.

On the other hand, George has had virtually no contact with the children since their removal from his care. The record reflects that George has not seen the children

since September 2013. Since that date, according to the record, he has sent one or two letters to the children. Nothing has been received from George since very early in the case.

George contends that he is happy for the children to stay with Kristen until he is released from prison. However, this desire of George does nothing to provide for the support, care, and comfort for the children.

Among the *Holley* factors to consider is the desire of the children. The record reflects that the children are bonded with Kristen. It is telling that, on the occasion of S.V.'s birthday, George called Kristen's home to speak with S.V., who refused to talk to him. According to the record, S.V. was very disturbed by the phone call. As a result of the phone call, S.V. has been in therapy to address changes in behavior that occurred following George's attempt to talk to her. S.V., according to the record, suffers a fear of being ripped out of the home she has with Kristen. Based on the record, the desires of the children would support the conclusion that the best interests of the children are to be served by termination of George's parental rights.

The emotional needs of the children now and in the future and the emotional and physical danger to the children are two additional elements of the *Holley* analysis of best interest. In connection with these elements, we need look no further than George's past conduct. Evidence that proves a predicate act may also be used to support the trial court's best interest finding. *In re D.S.,* 333 S.W.3d at 384. Additionally, George's future conduct may be measured by his past conduct. *See id.* As our discussion of the record clearly demonstrates, there are significant dangers to the children, both as to their emotional needs and physical danger by returning the children to George. George

has presented testimony as to his plans for the children. However, this testimony was vague at best. He wants the children to remain with Kristen for the foreseeable future with no explanation as to how they are to be cared for, except by Kristen. While it is true that George's parents both testified they are willing to help financially, this testimony lacked any specificity about amount of monetary support or, ultimately, how George would intend to reintegrate into the lives of the children. Such speculative testimony does not carry the day. It was for the trial court to weigh this testimony and resolve any conflicts that arose therein. *See In re J.F.C.,* 96 S.W.3d at 266. The record supports the proposition that these two factors weigh heavily in favor of the trial court's best interest finding.

As to the *Holley* factor concerning the stability of the home or the proposed placement, the record is also very clear. The only stable home these children have ever known is with Kristen. George has been incarcerated much of the time these children have been alive. The children are bonded with Kristen and, in fact, refer to her as "mama." Accordingly, this consideration weighs heavily in favor of the trial court's best interest finding.

We have previously discussed the party's plans for the children. Again, the record supports the trial court's finding regarding the best interests of the children being served by termination of George's parental rights.

In the final analysis, the trial court had sufficient evidence to support a finding by clear and convincing evidence that the best interests of the children was served by termination of George's parental rights. *See In re J.F.C.,* 96 S.W.3d at 266. Accordingly, George's issue to the contrary is overruled.

14

Conclusion

Having overruled all of George's issues regarding the sufficiency of the evidence to support termination and the best interests of the children, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice