

# IN THE
## TENTH COURT OF APPEALS

### No. 10-18-00247-CV

## IN THE INTEREST OF T.B., T.B., I.B. AND M.D., JR., CHILDREN

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2016-3831-3**

## MEMORANDUM OPINION

Shavon B. appeals from a judgment that terminated her parental rights to her children, T.B., T.B., I.B., and M.D., Jr.  Shavon complains that the evidence was legally and factually insufficient for the trial court to have found that she committed any of the three predicate acts upon which the termination was granted or that termination was in the best interest of the children.  TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), and (b)(2) (West 2014).  Because we find no reversible error, we affirm the judgment of the trial court.

**STANDARD OF REVIEW—LEGAL AND FACTUAL SUFFICIENCY**

The standards of review for legal and factual sufficiency in termination cases are well-established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id*. If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

In assessing the sufficiency of the evidence under the foregoing standards, we cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's exclusive province. *In re J.P.B.*, 180 S.W.3d at 573-74. Instead, we defer to the factfinder's credibility determinations as long as they are not unreasonable. *Id*.

**SECTION 161.001(b)(1)(D) AND (E)**

In her first issue, Shavon contends that the evidence is legally and factually insufficient to support the termination of her parental rights pursuant to Section 161.001(b)(1)(D) or (E) of the Family Code. Section 161.001(b)(1)(D) authorizes the termination of parental rights when a parent "knowingly placed or knowingly allowed a child to remain in conditions or surroundings that endangered the child's physical or emotional well-being." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (E) of section 161.001(1)(b) permits termination when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In reviewing the sufficiency of the evidence pursuant to Section 161.001(b)(1)(D), "we must examine the time before the [child]'s removal to determine whether the environment [of the home] posed a danger to the child's physical or emotional well-being." *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.). Subsection (D) permits termination of parental rights based on a single act or omission by the parent. *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied). Additionally, "illegal drug use by a parent likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re L.E.S.*,

471 S.W.3d 915, 925 (Tex. App.—Texarkana 2005, no pet.) (*citing In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

Additionally, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct" pursuant to Subsection (E). *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."). Illegal drug use may support termination under Subsection 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Even a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied).

The children were removed from Shavon after a report that Shavon was selling and using cocaine and marijuana around the children. Shavon tested positive for cocaine and marijuana immediately prior to the removal of the children and was arrested for child endangerment because two of the children were with her. Shavon pled guilty to the endangerment charge and was placed on deferred adjudication community

supervision.  There was testimony that one of the children was able to describe how her mother rolled marijuana into a brown paper, which she would then sell to people for money.  The evidence was legally and factually sufficient for the trial court to have found that Shavon knowingly allowed her children to remain in surroundings that endangered their physical or emotional well-being pursuant to Subsection (D).  The evidence was also legally and factually sufficient for the trial court to have found that she engaged in conduct that endangered the physical or emotional well-being of the children pursuant to Subsection (E).  We overrule issue one.  Although we have found the evidence sufficient as to two predicate grounds, because the evidence as to only one predicate ground must be sufficient to support the judgment, we do not need to address issue two regarding Shavon's failure to complete her service plan.  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

**BEST INTEREST**

In her third issue, Shavon complains that the evidence was legally and factually insufficient for the trial court to have found that termination of the parent-child relationship was in the best interest of the children.  There is a strong presumption that keeping a child with a parent is in the child's best interest.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the children include the following:  (A) the desires of the children; (B) the emotional and physical needs of the children now and in the future;

(C) the emotional and physical danger to the children now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the children; (F) the plans for the children by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children. *Id*. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id*.

At the time of the final hearing, the children were 13, 10, 6, and 3 years old. The youngest child was in a foster home where the parents were hoping to adopt him and was doing very well in that placement. The two oldest boys were placed together in a foster home where adoption could be a possibility; however, the children had stated that they did not wish to be adopted. The 6-year-old had just been placed in a foster home that was not an adoptive placement. The older children wanted to be returned to their mother. There were behavioral issues with the older children which made placements more difficult. The Department believed that if Shavon's parental rights were terminated,

other adoptive placements might be available and the Department would continue to seek adoption or relative placement after the termination.

Shavon provided names of several relatives for potential placements, however, none of them had worked out as a location for the Department to place the children. At least one of the placements fell through because of Shavon's interference. Shavon had also interfered with the first foster placement of the children when she had phone contact with them. According to the first foster parent, Shavon would tell the children that they did not have to behave or follow rules in the placement which would result in the children's misbehavior and ultimately, the children had to be relocated.

Shavon did not participate in services with the Department for a significant portion of the case, which was extended by six months to attempt to investigate an out-of-state relative placement. Shavon did complete a portion of her service plan, but did not seek a psychiatric evaluation even though it had been recommended in her psychological evaluation, which diagnosed her with depression, anxiety, and potentially bipolar disorder.

Shavon also tested positive for cocaine in hair tests multiple times throughout the case, although she contended that the tests were erroneous. Shavon provided one hair test that she had completed at her own expense which was negative from a different testing facility. Shavon admitted to using cocaine when the children were removed but denied that she had used it for more than a month or two around the time of the removal.

Shavon denied having a drug problem of any kind or that any drug use on her part affected the children. Initially, Shavon denied that she had sold drugs but admitted to selling drugs prior to the children's removal after the State confronted her about her having told her therapist that she had sold drugs. When asked what drugs she was selling, Shavon invoked her Fifth Amendment right to remain silent and refused to answer the question. Shavon had also been in a relationship with a man who was arrested for assaulting her during the proceedings.

Shavon had a job through a temporary agency and had recently moved into a three bedroom residence where she intended for the children to reside with her. Shavon claimed to have a strong support system that would help with the children but did not want to attempt to have the children placed with any of them. Shavon was very bonded with the children and visits demonstrated this; however, Shavon would tell the children that they would be coming home with her soon or other information about the case which would result in the children acting out at times throughout the proceedings.

The trial court ordered Shavon to submit to a nail test for drugs shortly before the final hearing. Shavon did not go to the testing location for two days and at that time, it was discovered that her toenails had been completely cut off, which made it impossible to perform the testing. Shavon appeared one other time at the testing facility; however, her nails were still too short for testing. Shavon's fingernails were also too short for testing.

A parent's history of drug abuse, plus continuing narcotics use while this case was pending, not only supports the trial court's endangerment finding, it also supports the best-interest determination. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (explaining that parent's history of drug use is relevant to trial court's best-interest finding). A parent's drug use is a condition indicative of instability in the home environment because it exposes a child to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.). Evidence of a parent's past pattern of drug use is relevant not only to the stability of the home she can provide but also to the emotional and physical needs of the children now and in the future and to the emotional and physical danger in which the children could be placed now and in the future. *See Holley*, 544 S.W.2d at 371-72 (factors two, three, and seven); *see also In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (finding pattern of illegal drug use suggested mother was not willing and able to provide child with safe environment—a primary consideration in determining child's best interest).

Further, the trial court could have inferred that Shavon's drug abuse would likely continue in the future based on the positive drug tests during the pendency of the proceedings. When determining best interest, a trial court may measure a parent's future

conduct by his past conduct. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

Although the older children were not in a permanent placement, the Texas Supreme Court has stated that "[e]vidence about placement plans and adoption are, of course, relevant to best interest," however, "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located." *In re C.H.*, 89 S.W.3d at 28. "Instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment." *Id.* In fact, the evidence showed that it was Shavon's disruptiveness to foster placements and potential relative placements that had in some part hindered the Department's attempts at permanency.

Although the children were bonded to their mother and did not want for their mother's rights to be terminated, even though we factor in their desires as we must, those desires are not allowed to overrule their physical safety and emotional health. *See In re M.Y.G.*, 423 S.W.3d 504, 514 (Tex. App.—Amarillo 2014, no pet.). Our analysis of this issue has taken the desires of the older children into account; however, such a request militates only slightly against the trial court's best interest finding in this case.

We find that after viewing all of the evidence in the light most favorable to the finding regarding the best interest of the children, the evidence was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between Shavon and the children was in the children's best interest. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding that termination of the parent-child relationship between Shavon and the children was in the children's best interest or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship was in the best interest of the children. We overrule issue three.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed October 17, 2018
[CV06]

