

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00405-CV

IN THE INTEREST OF J.E.H., A CHILD

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 30,165, Honorable Cornell Curtis, Presiding

March 25, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

In this accelerated appeal, Mother seeks reversal of the trial court's judgment terminating her parental rights to her child, J.E.H.[1]  By her appeal, Mother raises a single issue through which she challenges the sufficiency of the evidence to support the trial court's best-interest finding.  We affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Mother," and to the child by initials.  *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).  J.E.H.'s father is not a party to this appeal.

BACKGROUND

The Texas Department of Family and Protective Services became involved with this family in October 2024 when it received information that 15-year-old J.E.H. might be homeless or living in an unsafe and unstable environment. Further, the teen had been taken to the hospital for an overdose of a cousin's medicine shortly before removal. Mother failed to complete paperwork concerning that overdose, leading to J.E.H. being unable to return to attending school. Additionally, J.E.H. was reportedly "couch surfing" while Mother stayed at a residence[2] that was dirty and very cluttered, had broken and missing windows, and had trash piled outside. It did not have a serviceable kitchen, nor did it consistently have running water or electricity. Mother lived there with her two adult sons. A case worker testified the home was not suitable, safe, or appropriate for a child. The case worker also noted that even when J.E.H. was not in the home, "she still wasn't receiving appropriate care." This included medical care J.E.H. needed to address a problem she had with her knee.

J.E.H. was removed from Mother's care and placed in foster care. At the time of the final hearing, J.E.H. had been in the Department's care for a year. She had only three visits with her mother in that time and "felt uncomfortable" in those visits. She did not wish to contact her mother. J.E.H. was doing "really well" in her placement and desired to remain there. Her caregiver became licensed specifically to foster J.E.H. and wanted to be a long-term placement. J.E.H. was learning to take care of herself as a young

---

[2] Some testimony indicated Mother "squatted" at the residence. Mother testified she stayed at the home rent-free in return for keeping the home in a state that would keep the City from bothering the person who gave Mother permission to stay.

teenager, had a safe place to live, was not taking drugs or engaging in self-harm, and was involved in extracurricular activities. All of her needs were being met.

Mother suffers from medical issues, including diabetes and high blood pressure that causes swelling in her legs. At times, she "can't move." She sometimes has trouble getting out of bed and is on disability. Mother also suffers from some mental health conditions. After J.E.H. was removed from her care, Mother was required to complete several tasks and classes as part of a service plan to secure the return of J.E.H. to her care. While she completed a psychological evaluation, she failed to rectify her housing situation, although she claimed she was attempting to move at the time of the final hearing, and did not otherwise complete what was required. Specifically, she failed, among other things, to complete parenting classes and individual counseling. According to the case worker, Mother also did not financially or otherwise provide support for J.E.H. Mother said she sent some money to J.E.H. "probably about three or four times, I guess" but nothing significant.

The trial court terminated Mother's parental rights to J.E.H. on the grounds of endangering conditions, endangerment, and constructive abandonment. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (N). The trial court also found termination was in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b)(2).

### ANALYSIS

Standard of Review and Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky*

3

*v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Therefore, we stringently scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). But, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.*, 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any

4

alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

Best Interest

In this appeal, Mother challenges the legal and factual sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2). She does not contest the predicate grounds for termination under section 161.001(b)(1). Those findings are therefore binding on this Court. *See In re T.C.*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (failure to attack the statutory grounds for termination is a tacit concession by the parent that sufficient evidence supports a finding they occurred).

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that

must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

A determination of best interest necessarily focuses on the child, not the parent. *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

In evaluating whether termination is in a child's best interest, the courts are guided by the well-known non-exclusive list of factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462,

6

466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. We must also consider that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the principal consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Mother argues on appeal that her "parental rights were terminated because she is poor and disabled. That is not Constitutional, ethical or right." She further asserts a "poor and disabled parent is better than no parent." She contends the trial court reversibly erred in finding termination of her parental rights was in J.E.H.'s best interest. We disagree.

The trial court here was allowed to consider evidence in support of the predicate grounds in making the best-interest determination and Mother does not challenge those findings on appeal. That evidence showed Mother did not have a safe, suitable, or appropriate home for J.E.H. and allowed her teenage daughter to "couch surf" and stay with other people for a few days at a time. J.E.H. was at times found walking the streets to look for a place to stay. She stayed in places her mother likely did not know about. J.E.H. cared for herself and did not have clean clothes or appropriate hygiene. Mother did not provide adequate medical or financial care to J.E.H. and did not have reliable means of transportation to take J.E.H. where she needed to go. Lastly, Mother failed to complete paperwork that would allow J.E.H. to return to school and thus, J.E.H. was not attending school at the time she was removed from her mother's care. Taken together, this evidence clearly weighs in favor of the trial court's best-interest finding. *See In re*

7

*G.M.D.*, Nos. 01-25-00609-CV, 01-25-00940-CV, 2026 Tex. App. LEXIS 763, at *38–40 (Tex. App.—Houston [1st Dist.] Jan. 29, 2026, no pet.) (mem. op.) (considering factors such as failure to meet basic needs including safe and sanitary home, clothing, routine medical care, stable housing, and food in finding evidence sufficient to support termination).

Consideration of the *Holley* factors also leads us to find the evidence supporting the trial court's best-interest determination was sufficient. First, while Mother alluded to some plans she might have in the event J.E.H. was returned to her, they were somewhat vague. She testified there was no bed in the room J.E.H. would use in her current home but that she had beds in storage. Mother also stated she had some plans to possibly move, and she related to the court what those possibilities were. She said she wanted contact with J.E.H. and admitted they needed family counseling. However, testimony by other witnesses included opinions that even if Mother moved to a new home and made other changes, insufficient progress had been shown such that she would not "end up right back" to her former state of living. *In re K-A.B.M.*, 551 S.W.3d 275, 288–89 (Tex. App.—El Paso 2018, no pet.) ("[i]n reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children"). Therefore, the trial court could have reasonably concluded that the same dangers to J.E.H. remained and that termination of Mother's parental rights was in J.E.H.'s best interest. *See In re E.R.W.*, 528 S.W.3d 251, 267–68 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (reaching similar conclusion).

In contrast to Mother's amorphous plans and the testimony concerning Mother's inability to provide for J.E.H.'s needs, the evidence presented at the final hearing showed

8

J.E.H. was doing well in her foster placement. J.E.H. desires to stay there, and her caretaker wants her to stay and perhaps even adopt her. *See In re C.H.*, 89 S.W.3d at 28) (recognizing that evidence about placement plans and adoption are relevant to best interest). J.E.H. is learning to care for herself and is receiving adequate medical care. Her other needs are being met. She is in school, participating in extracurricular activities, and not engaging in drug use or self-harm. J.E.H.'s current placement provides permanence and stability that was sorely lacking when in her mother's care. *See In re B.J.C.*, 495 S.W.3d 29, 39 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (noting child's need for permanence through establishment of stable, permanent home is paramount consideration in best-interest determination). Lastly, testimony established J.E.H. did not desire to contact her mother. *See In re M.Y.G.*, 423 S.W.3d 504, 514–15 (Tex. App.—Amarillo 2014, no pet.) (while not binding, the trial court does consider a child's desires in making its determination concerning termination of parental rights).

Considering the applicable factors and the evidence before us, we find the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in J.E.H.'s best interest. We overrule Mother's sole issue on appeal.

## CONCLUSION

Having overruled Mother's appellate issue, we affirm the judgment of the trial court terminating Mother's parental rights.

Alex Yarbrough
Justice

9